UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | ) |
| **FREEDOM WATCH, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )          Civil Action No. 12-314 (RMC) |
| | ) |
| **DEPARTMENT OF STATE,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**MEMORANDUM OPINION**

Freedom Watch, Inc., sues the United States Departments of State, Treasury,

Defense, and Commerce, the Board of Governors of the Federal Reserve Board, the Central

Intelligence Agency, and the National Security Agency for allegedly failing to respond properly

to its Freedom of Information Act requests.  Because Freedom Watch did not file proper

requests, it has not exhausted its administrative remedies and has raced to court too soon.  The

Complaint will be dismissed and Freedom Watch's motion for partial summary judgment will be

denied as moot.

**I.  FACTS**

The Complaint says only that Freedom Watch is a public interest foundation that

seeks "to promote openness within the federal government and their actions."  Compl. [Dkt. 1]

¶ 2.  On January 23, 2012, Freedom Watch sent a request under the Freedom of Information Act,

5 U.S.C. § 552 ("FOIA"), to the Defendant Agencies.  Compl. ¶ 4.  Freedom Watch says that it

wanted information about waivers the Department of State may have granted to citizens,

corporations, or other countries to trade with Iran despite very tough sanctions against that

country to prevent its development of nuclear missiles.  *Id.*  Specifically, Freedom Watch sought:

> [A]ll correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things that refer or relate to the following in any way, within (10) business days as set forth below . . . .

*Id.*

Thereafter, a list of 63 categories of records was described, as set forth in the Complaint, ranging from "(1) [i]nternational sanctions (diplomatic, economic, military, or otherwise) created and/or signed into law by the United States, United States [sic] or the European Union against the country of Iran," to (63) "[a]ny and all enumerated documents and things which discuss Iran in the context of American politics and/or elections from 1992 to the present." *Id.* ¶ 4(1) & (63). As to each category, Freedom Watch requested "all" records that "refer or relate" to that category. *Id.* ¶ 4. Freedom Watch also sought a fee waiver from each agency on the basis that "[a]ny waiver of these sanctions may aid Iran in achieving nuclear weapons and thus put[] American citizens at risk," which waivers, if any, it would publicize on its website. *See, e.g.*, Decl. of Justin Guz, Defs. Mem. Supp. Mot. Dismiss ("MTD Mem."), Ex. A [Dkt. 4-1], Ex. 1, at 5 (fee waiver request as to Department of Commerce). From each agency, Freedom Watch requested expedited processing because the records are "of urgent importance and . . . in the extreme public interest," about which "[t]he American people need to be informed expeditiously . . . as it [sic] affects their immediate well being, economically and otherwise." Compl. ¶ 6; *see also, e.g.*, Guz Decl., Ex. 1, at 5 (discussing request to expedite as to Department of Commerce).

### A. Defendant Agencies' Responses

#### 1. Department of Commerce

Commerce received the FOIA request on January 24, 2012, and responded in writing on February 3, 2012, ten days later. Guz Decl. ¶ 2. Commerce denied the request for a fee waiver and expedited processing and explained its administrative appeals procedure. *Id.* ¶ 3. Freedom Watch did not appeal and the time to do so has passed. *Id.* ¶ 5. Commerce wrote to Freedom Watch again on March 27, 2012, providing an estimate of fees for search and duplication costs and querying whether Freedom Watch would agree to narrow its request. *Id.* ¶ 6. Freedom Watch never responded. *Id.* ¶ 7.

#### 2. Board of Governors of the Federal Reserve System

The Federal Reserve Board of Governors ("FRB") received the FOIA request on January 23, 2012, and began attempting to reach Freedom Watch by telephone on February 10, 2012. Decl. of Odelle Quisumbing, MTD Mem., Ex. B [Dkt. 4-2], ¶¶ 1, 6–8. Some calls were directed to a voice mailbox in which no message could be left. *Id.* ¶ 7. On three occasions, an FRB representative spoke to Larry Klayman, Esquire, counsel for Freedom Watch, who said that he was unavailable and requested that the FRB call back. *Id.* ¶ 8. On February 28, 2012, the FRB sent a letter to Freedom Watch stating that the FOIA request was overbroad and unduly burdensome and that FRB would not process the request unless Freedom Watch provided a narrower construction. *Id.* ¶ 9. Freedom Watch never responded and never appealed. *Id.* ¶ 10.

#### 3. National Security Agency

The FOIA request was received at the National Security Agency ("NSA") on January 23, 2012. Decl. of Pamela Phillips, MTD Mem., Ex. C [Dkt. 4-3], ¶ 3. NSA telephoned Freedom Watch on January 25, 2012, and asked if Freedom Watch would agree to narrow its request. *Id.* ¶ 4. Freedom Watch declined. *Id.* On February 1, 2012, NSA sent Freedom Watch

a letter in which NSA denied the expedited-processing request and noted that Freedom Watch

had a right to appeal, but Freedom Watch did not do so. *Id.* ¶ 5.  On March 20, 2012, NSA sent a

second letter, this time denying the fee-waiver request and responding to some of Freedom

Watch's document requests. *Id.* ¶ 6.  In the second letter, NSA stated: (1) it had searched and

located no records responsive to forty-five requests; (2) it could neither confirm nor deny the

existence of records responsive to two requests; (3) two other requests would involve an overly

broad and costly search, and thus NSA would not search unless Freedom Watch provided a

narrower construction; and (4) NSA would only search as to the remaining fourteen requests if

Freedom Watch paid the search costs as stated on an enclosed estimate. *Id.*  As of the filing of

the motion to dismiss, Freedom Watch had not responded to NSA and had not appealed. *Id.* ¶ 7.

### 4.  Department of Treasury

On January 27, 2012, Treasury received Freedom Watch's FOIA request.  Decl.

Hugh Gilmore, MTD Mem., Ex. D [Dkt. 4-4], ¶ 4.  Treasury responded on January 31, 2012,

denying the expedited-processing request and stating that the request as formulated was too

broad to be processed. *Id.* ¶ 5.  Treasury further stated that Freedom Watch had thirty days to

respond, which Freedom Watch did not do. *Id.* ¶¶ 5–7.

### 5.  Central Intelligence Agency, Department of Defense, and Department of State

The Central Intelligence Agency wrote to Freedom Watch on February 1, 2012,

informing it that the FOIA request should be directed to State and Treasury.  MTD Mem. 5–6.

DoD, in a letter dated January 30, 2012, "stated that it could not process the request, that the

request was not reasonably described to support processing, and that Freedom Watch might

consider seeking the requested records from other agencies." *Id.* at 6.  State never responded to

Freedom Watch's request. *Id.*

### B.  Litigation

Freedom Watch filed its Complaint on February 27, 2012, just over a month after it submitted its FOIA requests.  It averred that "Defendant[s] [were] required and failed to respond to Plaintiff's FOIA requests within ten (10) working days for expedited processing, February 6, 2012, or even the standard twenty (20) days, February 21, 2012. . . .  Nor have they indicated whether or when any responsive records will be produced."  Compl. ¶¶ 8–9.  Because the Defendant Agencies "failed to comply" with the short timelines set forth in FOIA, Freedom Watch declared that it "is deemed to have exhausted any and all administrative remedies . . . ." *Id.* ¶ 10.

The Defendant Agencies filed a joint motion to dismiss on May 4, 2012.  *See* [Dkt. 4].  After three extensions, Freedom Watch filed its Opposition on June 29, 2012.  *See* Pl. Opp. ("Opp.") [Dkt. 8].  A reply was filed by the Defendant Agencies on July 6, 2012, *see* Dkt. 9, and shortly thereafter, on July 13, 2012, Freedom Watch filed a motion for partial summary judgment against State, which, as indicated, failed to answer the FOIA request, *see* Dkt. 10. State filed its opposition to the motion for partial summary judgment immediately, *see* Dkt. 11, along with a motion to stay the motion for partial summary judgment, *see* Dkt. 12.  In addition, Freedom Watch filed a motion for attorney's fees and costs on August 22, 2012.  When the Federal Reserve filed a notice of supplemental authority on October 9, 2012, regarding the motion to dismiss, *see* Dkt. 20, Freedom Watch instantly filed its response on October 11, *see* Dkt. 21.

Not needing more lawyers to spend more time on more briefs on more subjects in order to decide the motion to dismiss, the Court granted the motion to stay and ordered that no additional pleadings could be filed without leave.  *See* First Minute Order dated Oct. 26, 2012. The same day, the Court denied the motion by Freedom Watch for attorney's fees without

prejudice as premature. *See* Second Minute Order dated Oct. 26, 2012. Freedom Watch has

complained volubly by phone and by mail—but has avoided complicating the docket more.

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

a claim. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) requires that a complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(1). A complaint must be sufficient "to give a defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (internal citations omitted). Although a complaint does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief  "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the

speculative level." *Id*.

To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at

570. When a plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged, then the claim has facial

plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must treat the complaint's

factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court

need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief." *Id*. at 679.

Exhaustion of administrative remedies is required under FOIA before a party can

seek judicial review. *Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985)

(citing *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979)); *see also Oglesby v. Dep't

of Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990) (requiring exhaustion of administrative remedies

with regard to *each* aspect of the request for which relief is sought).  Failure to comply with

FOIA and agency regulations by filing a proper request "amounts to a failure to exhaust

administrative remedies" and is properly considered on a motion to dismiss. *Dale v. IRS*, 238 F.

Supp. 2d 99, 103 (D.D.C. 2002) (citing, *inter alia*, *Gillin v. IRS*, 980 F.2d 819 (1st Cir. 1992)).

This exhaustion requirement is a "'a jurisprudential doctrine' rather than a jurisdictional

prerequisite," *Skrzypek v. Dep't of Treasury*, 550 F. Supp. 2d 71, 73 (D.D.C. 2008); therefore, if

a plaintiff's administrative remedies have not been exhausted, "the matter is properly the subject

of a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted." *Jones v. Dep't of Justice*, 576 F. Supp. 2d 64, 65–66 (D.D.C. 2008).

### III.  ANALYSIS

The law is not in dispute here, only its application to these facts.  The motion

seeks dismissal because the FOIA requests, all identical, were not valid in the first place.  MTD

Mem. 7–19.  As the Defendant Agencies point out, *id.* at 7, and as Freedom Watch

acknowledges, Opp. at 4, an agency's "obligation under FOIA begins only upon receipt of a

valid request." *Dale*, 238 F. Supp. 2d at 103.  This requires a "request for records which (i)

reasonably describes such records and (ii) is made in accordance with published rules stating the

time, place, fees (if any), and procedures to be followed."[1]  5 U.S.C. § 552(a)(3)(A).  The

Defendant Agencies contend that the FOIA requests failed on both standards: they did not

reasonably describe the records sought and do not comply with agency regulations.

The "basic purpose" of FOIA is "to open agency action to the light of public

scrutiny."  *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772 (1989)

(internal citation and quotation marks omitted); *see also NLRB v. Robbins Tire & Rubber Co.*,

437 U.S. 214, 242 (1978) (describing FOIA as "vital to the functioning of a democratic society,

needed to check against corruption and to hold the governors accountable to the governed").  As

Freedom Watch points out, Opp. at 3, the goals of FOIA are achieved through the disclosure of

government records.  *See Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984).  Like the Defendant

Agencies, Freedom Watch cites *Dale v. IRS*, agreeing that it articulates the relevant standard,

Opp. at 4, and acknowledging that the central issue "is whether 'the agency is able to determine

precisely what records are being requested.'"  Opp. at 5 (quoting *Dale*, 238 F. Supp. 2d at 104;

internal quotation from *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997)).  That

evaluation turns on whether a "description of a requested document would be sufficient [to]

enable[] a professional employee of the agency who was familiar with the subject area of the

request to locate the record with a reasonable amount of effort."  *Truitt v. Dep't of State*, 897

F.2d 540, 545 n.36 (D.C. Cir. 1990) (internal citation and quotation marks omitted), *quoted in*

Opp. at 5 & MTD Mem. at 9.

---

[1] As the Defendant Agencies point out, each agency implicated here has its own regulations that
incorporate the "reasonably describes" standard of 5 U.S.C. § 552(a)(3)(A).  MTD Mem. at 19
(citing each agency's regulations).  Because the standards are thus the same, the Court need not
address the individual agencies' regulations separately.  It suffices to say that Freedom Watch's
requests violate FOIA and thus also violate those regulations.

According to Freedom Watch, its requests "were unequivocally specific enough" to meet the legal standard because Defendant Agencies "conveniently" complain only about two subparts of its request "in an effort to pass off and stonewall the entirety of the request."  Opp. at 5.  In contrast, the Defendant Agencies argue that none of the records were described in reasonable detail and that Freedom Watch "ask[ed] these seven agencies to look for just about everything they have regarding, among other things, Iran, China, Venezuela, Russia, sanctions, waivers, and communications between the Secretary of State, the Secretary of the Treasury, and the President."  MTD Mem. at 11.  They contend that the requests were "an all-encompassing fishing expedition . . . at taxpayer expense."  *Id.* (quoting *Dale*, 238 F. Supp. 2d at 104–05).

Having reviewed Freedom Watch's requests, the Court agrees with the Defendant Agencies and finds that the requests were invalid *ab initio*.  *See* 5 U.S.C. § 552(a)(3)(A).  The requests failed to identify the documents sought with any modicum of specificity and were thus fatally overbroad and burdensome.  *See Dale*, 238 F. Supp. 2d at 104.

Freedom Watch contends that the Defendant Agencies have cherry-picked "two subparts" about which to argue in the instant motion to dismiss, but it is clear that Defendants challenged all subparts of the requests with varying levels of specificity.  *E.g.*, MTD Mem. at 12 ("And that is just one of the sixty-three subparts; the others are likewise riddled with ambiguities.").  Indeed, since the requests asked for "all" records that "relate to" each subject area, Compl. ¶ 4, they were inevitably "subject to criticism as overbroad since life, like law, is 'a seamless web,' and all documents 'relate' to all others in some remote fashion."  *Massachusetts v. Dep't of Health & Human Servs.*, 727 F. Supp. 35, 36 n.2 (D. Mass. 1989) (discussing FOIA request for "all documents 'relating to'").

As the Defendant Agencies note, MTD Mem. at 11–12, subpart ¶ 4(33) is a useful example of the insufficiently precise nature of the FOIA requests.  Freedom Watch sought "all" records that "refer or relate to . . . [a]ny and all communications to or from President Obama, his administration, or the White House in general regarding China."  Compl. ¶ 4(33).  Aside from the clarity of "President Obama," the request did not in any way limit the scope of "his administration" or "the White House in general" to those persons, for instance, who might have had something to do with China or the waivers of Iran sanctions with which Freedom Watch says it is concerned.  Of course, "regarding China" indicates a much broader scope of request than dealing with waivers of sanctions against Iran since "regarding China" has no identifiable limitation.

Other subparts of the requests made by Freedom Watch are similarly deficient because they did not "reasonably describe[ ]" the records requested.  *See* 5 U.S.C. § 552(a)(3)(A).  Subpart ¶ 4(63), for example, sought "all" records that "discuss Iran in the context of American politics and/or elections."  Freedom Watch refused to discuss narrowing its requests, leaving unanswered how broadly it thinks an objective agency professional should construe the terms "context of American politics *and* elections" and "context of American politics *or* elections."  Likewise, subparts (6) through (8) sought "all" records that "refer or relate to" "[w]aivers or other exceptions to international sanctions granted to any country that has relations with" China, Venezuela, or Russia.  Compl. ¶ 4(6)–(8).  There were also requests for "all" records that "refer or relate to" dissolution of sanctions against Iran, China, Venezuela and Russia; the breadth of "refer or relate to" in this request would not even require *actual* dissolution of sanctions to require searches by Defendant Agencies—and possible production of records.  *Id.*  Instead, they would require search and production if dissolution were ever, even

vaguely, mentioned.  At subparts ¶ 4(22), (23) and (24), Freedom Watch asked for "[a]ny and all

communications between the office of Secretary of State Hillary Clinton and the office of

Secretary of the Treasury Timothy Geithner," "the office of Secretary of State Hillary Clinton

and the White House," and "the office of Secretary of Treasury Timothy Geithner and the White

House."  Compl. ¶ 4(22)– (24).  As with all the contested requests, neither time limitation nor

subject matter of such communications is suggested.  *See Am. Fed. Gov't Emps., Local 2782 v.*

*Dep't of Commerce*, 632 F. Supp. 1272, 1277–78 (D.D.C. 1986) ("[B]road sweeping requests

lacking specificity are not permissible." (internal citation and quotation marks omitted)).

   Freedom Watch *now* offers to work with Defendant Agencies to narrow its

requests.  *See* Opp. at 6.  It did not make such an attempt before it filed suit, *see* MTD Mem. at

2–6, and its belated realization that its requests may have been too broadly framed is not relevant

to the question before the Court: the sufficiency of the requests submitted to the Defendant

Agencies and challenged for insufficient (or no response) in the Complaint.  *See Porter v. CIA*,

579 F. Supp. 2d 121, 128 n.7 (D.D.C. 2008) (cautioning against "[a]llowing a plaintiff who

circumvents a detailed administrative scheme to seek judicial review in federal court").  Freedom

Watch's offer to cut the scope of its requests is insufficient to avoid dismissal; a contrary result

would overlook agency administrative procedures for that very purpose and encourage litigating

by crying wolf, which Freedom Watch did here.

   The Court concludes that the FOIA requests submitted by Freedom Watch to the

Defendant Agencies were infirm from the beginning.  Thus Freedom Watch never submitted a

valid FOIA request to any of the Defendant Agencies.  The requests were not valid because they

did not describe the records sought sufficiently to allow a professional employee familiar with

the area in question to locate responsive records.  *See Tax Analysts*, 117 F.3d at 610.  Because

the requests themselves were invalid, no Defendant Agency, including State, has violated FOIA by its response, or failure to respond, to Freedom Watch.  Thus, the Court grants the motion to dismiss with respect to all Defendant Agencies.[2]

Freedom Watch also seeks review of the refusals of some of the Defendant Agencies to grant it a fee waiver.  However, the Complaint does not complain of these refusals. Inasmuch as the Complaint will be dismissed, in whole, for other reasons, the issue of a fee waiver for these requests is moot.  Likewise, Freedom Watch's motion for partial summary judgment against State will be denied as moot.

## IV.  CONCLUSION

For the reasons set forth above, the Complaint must be dismissed.  The FOIA requests about which Freedom Watch complains were invalid because they did not reasonably describe the records sought.   The Court will grant the Defendant Agencies' motion to dismiss the Complaint and will deny Freedom Watch's motion for partial summary judgment as moot. A memorializing Order accompanies this Memorandum Opinion.

DATE: February 27, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

---

[2] It is also separately clear that Freedom Watch failed to exhaust administrative remedies with respect to Commerce, NSA, FRB, and Treasury.  Those agencies would also be entitled to dismissal of the Complaint for that reason. *See Stebbins*, 757 F.2d at 366 (requiring exhaustion of remedies in FOIA case before suit).